UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
COOKEVILLE DIVISION

CLAUDE EDWARD TEMPLETON,

        Plaintiff,

v.

SOCIAL SECURITY ADMINISTRATION,

        Defendant.
_____/

Civil Action No. 2:16-cv-00061
Honorable Waverly D. Crenshaw, Jr.
Magistrate Judge David R. Grand

### REPORT AND RECOMMENDATION TO DENY PLAINTIFF'S MOTION FOR JUDGMENT ON THE RECORD [12]

Plaintiff Claude Edward Templeton ("Templeton") brings this action pursuant to 42 U.S.C. § 405(g), challenging the final decision of Defendant Commissioner of Social Security ("Commissioner") denying his applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under the Social Security Act (the "Act"). On December 8, 2016, Templeton filed a Motion for Judgment on the Administrative Record and a Memorandum in Support. (Docs. #12, 13). On February 1, 2017, the Commissioner filed a response in opposition to Templeton's motion. (Doc. #16). On January 30, 2018, this matter was referred to this Court for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).

**I.    RECOMMENDATION**

For the reasons set forth below, the Court finds that substantial evidence supports the Administrative Law Judge's ("ALJ") conclusion that Templeton is not disabled under the Act. Accordingly, the Court recommends that Templeton's Motion for Judgment on the

Administrative Record (Doc. #12) be DENIED, and that, pursuant to sentence four of 42 U.S.C. § 405(g), the ALJ's decision be AFFIRMED.

## II.     REPORT

### A.     Procedural History

After Templeton's disability applications were denied at the initial level on May 5, 2011 (Tr. 87-90), and on reconsideration on October 24, 1011 (Tr. 96-99), he timely requested an administrative hearing, which was held on December 18, 2012, before ALJ Joan A. Lawrence. (Tr. 18-29). On April 11, 2013, the ALJ issued a written decision finding that Templeton is not disabled under the Act. (Tr. 68-78). Subsequently, on May 8, 2014, the Appeals Council vacated the ALJ's decision and remanded the matter for a new hearing and decision. (Tr. 83-85). Thus, a second administrative hearing was held before ALJ Lawrence on March 17, 2015; Templeton, who was represented by attorney John Wayne Allen, testified at that hearing. (Tr. 2-16). On August 18, 2015, ALJ Lawrence issued a written decision again finding that Templeton is not disabled under the Act. (Tr. 40-56). On June 22, 2016, the Appeals Council denied review. (Tr. 31-33). Templeton timely filed for judicial review of the final decision on August 24, 2016. (Doc. #1).

### B.     Framework for Disability Determinations

Under the Act, SSI and DIB are available only for those who have a "disability." *See Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). The Act defines "disability" as the:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). The Commissioner's regulations provide that disability is to be determined through the application of a five-step sequential analysis:

2

Step One: If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.

Step Two: If the claimant does not have a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities," benefits are denied without further analysis.

Step Three: If the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education, or work experience.

Step Four: If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.

Step Five: Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that the claimant can perform, in view of his or her age, education, and work experience, benefits are denied.

*Scheuneman v. Comm'r of Soc. Sec.*, 2011 WL 6937331, at *7 (E.D. Mich. Dec. 6, 2011) (citing 20 C.F.R. § 404.1520); *see also Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001). "The burden of proof is on the claimant throughout the first four steps …. If the analysis reaches the fifth step without a finding that claimant is not disabled, the burden transfers to the [defendant]." *Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994).

### C. Background

#### 1. Templeton's Reports and Testimony

At the time of the second administrative hearing, Templeton was 56 years old, and at 5'7" tall, weighed 136 pounds. (Tr. 5-6). He was divorced and lived in a trailer with his sister and seven other family members. (Tr. 15, 195, 227). He completed high school but had no further education. (Tr. 6, 204-05). Templeton worked at a lumberyard for approximately 20 years, but he stopped working on February 15, 2010, because of back pain. (Tr. 6-7, 204-05).

3

Templeton alleges disability primarily as a result of back pain, chronic obstructive pulmonary disease ("COPD"), and alcoholism. (Tr. 195, 204). He testified that he also tore the rotator cuff in his right shoulder but could not have surgery because he lacked insurance. (Tr.8). He is able to prepare simple meals, wash dishes, shop in stores, and spend time with friends and family members. (Tr. 197-99, 229-31). He can walk approximately ½ mile and sit for 30 minutes at a time. (Tr. 9, 13). He does not drive because he lost his license as a result of numerous DUI convictions. (Tr. 6, 198). But, he still drinks every day "if [he] can get it." (Tr. 14).

2. *Medical Evidence[1]*

On January 27, 2011, Templeton presented to the emergency room complaining of right shoulder pain radiating into his chest. (Tr. 272-74). At that visit, he reported that he was drinking "up to a case of beer a day"; he was advised to stop drinking alcohol and smoking. (Tr. 273). An exercise stress test was normal; x-rays of his shoulder showed no significant abnormalities; and he was treated conservatively for a suspected rotator cuff tear. (Tr. 272-74).

On February 7, 2011, Templeton underwent a consultative physical examination with Donita Keown, M.D. (Tr. 287-95). Templeton reported the gradual onset of right shoulder pain after shoveling snow a week or two earlier, as well as a long history of back pain that had been treated with ibuprofen and "Hydrose." (Tr. 287). Dr. Keown noted that Templeton used no assistive devices and moved from seated to standing unassisted. (Tr. 288). Toe and heel lift, one-foot stand, and Romberg testing were within normal limits, and tandem steps were completed unremarkably and without instability. (Tr. 289). Dr. Keown completed a Medical Source Statement in which she opined that Templeton could occasionally lift 50 pounds; could

---

[1] Because Templeton only challenges the ALJ's findings regarding his physical limitations, the Court will limit its discussion to the medical evidence regarding his physical impairments.

4

occasionally carry 20 pounds; could frequently perform no lifting or carrying; could sit for two hours at one time for a total of eight hours in an eight-hour day; could stand for two hours at one time for a total of seven hours in an eight-hour day; could walk for one hour at one time for a total of seven hours in an eight-hour day; could occasionally reach, push, or pull with the right hand; could frequently handle with the right hand; could frequently climb ramps or stairs; could occasionally climb ladders or scaffolds; could frequently stoop; could occasionally kneel and crouch; and could never crawl. (Tr. 290-92).

Templeton then established care with Cumberland County Health Department in March 2011. (Tr. 305-06). He complained of shoulder pain and was offered a referral to an orthopedist, but declined citing cost. (*Id.*). In April 2011, he reported having good results taking ibuprofen for back pain. (Tr. 301). On more than one occasion, he was offered information about alcohol cessation programs, but he declined, saying these programs were "not helpful in [the] past." (Tr. 301, 304).

On May 3, 2011, state agency physician Lewis Goldfine, M.D. reviewed the record and opined that Templeton could lift and/or carry 50 pounds occasionally and 25 pounds frequently; could stand and/or walk (with normal breaks) for a total of about six hours in an eight-hour workday; could sit (with normal breaks) for a total of about six hours in an eight-hour workday; and could frequently perform all postural activities. (Tr. 310-17).

On September 14, 2011, Templeton underwent a consultative physical examination and pulmonary function testing with Jeffrey Summers, M.D. (Tr. 344-54). Pulmonary function testing confirmed moderate COPD, and Dr. Summers opined as follows:

> Based on these findings, it is reasonable to expect that Mr. Templeton will have difficulty performing moderate to heavy exertion, as well as working in dusty conditions, temperature extremes, high humidity, etc. He does appear capable of sedentary and low to moderate intensity level activities

5

in stable working environments.

(Tr. 345).

On October 20, 2011, state agency physician James Millis, M.D. reconsidered the evidence and opined that Templeton could lift and/or carry 50 pounds occasionally and 25 pounds frequently; could stand and/or walk (with normal breaks) for a total of about six hours in an eight-hour workday; could sit (with normal breaks) for a total of about six hours in an eight-hour workday; and should avoid concentrated exposure to extreme heat, extreme cold, humidity, and pulmonary irritants. (Tr. 355-63).

On November 14, 2012, at the request of his attorney, Templeton underwent an independent examination with Michael Cox, M.D. (Tr. 365-70). Dr. Cox diagnosed chronic lower back pain, rotator cuff disease on the right with resultant right shoulder pain, chronic tendinitis of the left shoulder, osteoarthritis of the knee based on history, COPD, and hypothyroidism. (Tr. 370). Dr. Cox opined that Templeton could lift 10 pounds occasionally and less than 10 pounds frequently, sit for four hours, and stand for less than two hours. (Tr. 366-67).

### D. The ALJ's Findings

Following the five-step sequential analysis, the ALJ found that Templeton is not disabled under the Act. At Step One, the ALJ found that Templeton has not engaged in substantial gainful activity since February 15, 2010 (the alleged onset date). (Tr. 43). At Step Two, the ALJ found that he has the severe impairments of episodic mood disorder, alcohol dependence, and COPD. (*Id.*). At Step Three, the ALJ found that Templeton's impairments, whether considered alone or in combination, do not meet or medically equal a listed impairment. (*Id.*).

The ALJ then assessed Templeton's residual functional capacity ("RFC"), concluding that he is capable of performing medium work, with the following additional limitations: must

avoid all pulmonary irritants such as fumes, odors, dust, gases, and poor ventilation due to his COPD; can perform simple, one- and two-step instructions; can concentrate for at least two hours at a time; and can interact with others on a frequent basis and adapt to occasional changes. (Tr. 46).

At Step Four, the ALJ determined that Templeton was unable to perform any of his past relevant work. (Tr. 54). At Step Five, the ALJ concluded, based in part on the vocational expert's responses to interrogatories (no vocational expert testified at the hearing), that Templeton is capable of performing a significant number of jobs that exist in the national economy. (*Id.*). As a result, the ALJ concluded that Templeton is not disabled under the Act. (Tr. 55).

### E. Standard of Review

The District Court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review under this statute is limited in that the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005) (internal citations omitted); *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 654 (6th Cir. 2009) ("[I]f an agency has failed to adhere to its own procedures, we will not remand for further administrative proceedings unless the claimant has been prejudiced on the merits or deprived of substantial rights because of the agency's procedural lapses.") (internal quotations omitted). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)

(internal quotations omitted). In deciding whether substantial evidence supports the ALJ's decision, the court does "not try the case *de novo*, resolve conflicts in evidence or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Rogers*, 486 F.3d at 247 ("It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant.").

When reviewing the ALJ's factual findings, the court is limited to an examination of the record and must consider the record as a whole. *See Bass*, 499 F.3d at 512-13; *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). The court "may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council," or in this case, the ALJ. *Heston*, 245 F.3d at 535; *Walker v. Sec'y of Health & Human Servs.*, 884 F.2d 241, 245 (6th Cir. 1989). There is no requirement, however, that either the ALJ or this court discuss every piece of evidence in the administrative record. *See Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006) ("[A]n ALJ can consider all evidence without directly addressing in his written decision every piece of evidence submitted by a party.") (internal quotations omitted). If the Commissioner's decision is supported by substantial evidence, "it must be affirmed even if the reviewing court would decide the matter differently and even if substantial evidence also supports the opposite conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (internal citations omitted); *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) ("if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion'").

**F. Analysis**

As set forth above, the ALJ considered the record as a whole, including the medical

evidence and Templeton's subjective complaints, and found that Templeton retains the RFC to perform a limited range of simple, medium work. (Tr. 46). Templeton now argues that, in formulating his RFC, the ALJ erred in weighing the medical opinions and in evaluating the credibility of his subjective complaints. (Doc. #13 at 6-14). For the reasons set forth below, the Court finds no merit to these arguments.

> 1. *The ALJ Properly Evaluated the Medical Opinions and Determined that Templeton Could Perform Medium Work*

In formulating Templeton's physical RFC, the ALJ gave significant weight to the opinions of the state agency physicians, Drs. Goldfine and Millis, who agreed that Templeton could lift and/or carry 50 pounds occasionally and 25 pounds frequently; could stand and/or walk (with normal breaks) for a total of about six hours in an eight-hour workday; and could sit (with normal breaks) for a total of about six hours in an eight-hour workday. (Tr. 52, 310-17, 355-63). The ALJ found that these opinions were consistent with the objective and clinical medical evidence of record, as well as with Templeton's presentation at the two administrative hearings. (Tr. 52).[2]

---

[2] Templeton seems to argue – in cursory fashion – that the ALJ erred in crediting the opinions of the state agency physicians (who merely reviewed his medical records) over those of Dr. Cox and Dr. Keown (who examined him), both of whom Templeton asserts found him "far more limited than medium work." (Doc. #13 at 10). This argument lacks merit. An ALJ is not *required* to give more weight to the opinion of an examining physician over a non-examining physician. *See, e.g., Atterberry v. Sec'y of Health & Human Servs.*, 871 F.2d 567, 570 (6th Cir. 1989) (a non-examining medical expert's opinion "based upon the objective evidence of medical reports made by the claimant's treating physicians and testimony given by the claimant himself," which is consistent with the evidence of record, can constitute substantial evidence to support an ALJ's decision). And, considering the merits of Templeton's arguments in this respect, it is clear that he has identified no error in the ALJ's weighing of these opinions. As to Dr. Cox, Templeton merely points out that "the ALJ gave no credit to his opinion." (Doc. #13 at 10). He makes no effort whatsoever to identify how or why the ALJ's decision to discount Dr. Cox's opinion was erroneous, so any such challenge is waived. *See McPherson v. Kelsey*, 125 F.3d 989, 995 (6th Cir. 1997) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived." (internal quotations omitted)). Similarly, Templeton notes that Dr. Keown found he had "positive straight leg raising" and

9

Templeton argues that the ALJ erred in affording only "some" weight to the opinion of the consultative examiner, Dr. Summers. (Doc. #13 at 7-9). Dr. Summers examined Templeton in September 2011, diagnosing him with COPD and opining as follows:

> Based on these findings, it is reasonable to expect that Mr. Templeton will have difficulty performing moderate to heavy exertion, as well as working in dusty conditions, temperature extremes, high humidity, etc. He does appear capable of sedentary and low to moderate intensity level activities in stable working environments.

(Tr. 345). The ALJ considered Dr. Summers' opinion, noting that pulmonary function testing supported his assertion that Templeton should avoid environmental irritants. (Tr. 52). However, the ALJ then stated:

> Dr. Summers' opinion is rather vague, however, and is therefore of limited utility. The doctor's assertion that the claimant would have "difficulty performing moderate to heavy exertion" and would be "capable of…low-to-moderate intensity level activities in stable working environments" is imprecise.

(*Id.* (quoting Tr. 345)). In his motion, Templeton challenges the ALJ's evaluation of this portion of the opinion, asserting that in failing to assign it greater weight, and in therefore finding that Templeton can perform medium work, she failed to comply with the applicable regulations. The Court disagrees.

In considering the opinion of a non-treating physician, such as Dr. Summers, an ALJ is "not bound by any findings made by State agency medical or psychological consultants, or other program physicians or psychologists," but the ALJ "must consider findings and other opinions of State agency medical and psychological consultants and other program physicians,

---

"imposed limitations consistent with light work." (Doc. #13 at 10). But, Dr. Keown noted that Templeton's straight leg raising tests were "inconsistent." (Tr. 288). And, more importantly, the ALJ considered Dr. Keown's opinion, but discounted it as unsupported by the overall evidence of record, as well as her own "relatively benign examination." (Tr. 51). Under the circumstances, Templeton has identified no error warranting remand in the ALJ's evaluation of either of these medical opinions.

10

psychologists, and other medical specialists as opinion evidence[.]" 20 C.F.R. §§ 404.1527(e)(2)(i), 416.927(e)(2)(i).[3] The ALJ must evaluate the consultative physician's opinion using the relevant factors set forth in 20 C.F.R. §§ 404.1527(c)(2-6) and 416.927(c)(2-6), the same factors used to analyze the opinion of a treating physician. *See Jericol Mining, Inc. v. Napier,* 301 F.3d 703, 710 (6th Cir. 2002) ("We believe that the same factors that justify placing greater weight on the opinions of a treating physician are appropriate considerations in determining the weight to be given an examining physician's views."). These factors include the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and the specialization of the treating source. *See* 20 C.F.R. §§ 404.1527(c)(2-6), 416.927(c)(2-6).

In this case, contrary to Templeton's argument, the ALJ properly evaluated Dr. Summers' opinion in accordance with these regulations. Specifically, the ALJ noted that Dr. Summers saw Templeton as part of a consultative evaluation. (Tr. 49). *See* 20 C.F.R. §§ 404.1527(c)(1-2), 416.927(c)(1-2). The ALJ also discussed the supportability of Dr. Summers' opinion, noting that his opinion that Templeton should avoid environmental irritants was supported by the pulmonary function testing. (Tr. 52). *See* 20 C.F.R. §§ 404.1527(c)(3), 416.927(c)(3). As a result, the ALJ gave some weight to this aspect of Dr. Summers' opinion and incorporated pulmonary restrictions into the RFC finding. (Tr. 46, 52). With respect to other aspects of Dr. Summers' opinion – namely, that Templeton would have difficulty performing "moderate to heavy exertion" but could perform "sedentary and low to moderate intensity level activities" – the ALJ properly found this statement to be vague and imprecise.

---

[3] The Social Security Administration amended these regulations, effective March 27, 2017, but the Court will cite to the regulations in effect at the time of the ALJ's decision.

11

(Tr. 52). *See* 20 C.F.R. §§ 404.1527(c)(3), 416.927(c)(3). As the State agency medical consultant noted, definitions of exertional levels are left to the Commissioner. (Tr. 362). The vague statement that Templeton would have difficulty performing "moderate" exertion does not indicate that Dr. Summers intended to opine that Templeton could not perform medium work, as defined in the regulations. Indeed, Dr. Summers did not offer any opinion as to Templeton's ability to lift, carry, sit, stand, or walk. (Tr. 345). As the language used was vague and imprecise, the ALJ properly found this aspect of Dr. Summers' opinion of limited value.

Moreover, the ALJ's decision to discount Dr. Summers' opinion on this basis is further supported by the medical evidence of record, which – as to Templeton's alleged back and shoulder impairments – is *extremely* sparse. As set forth above, Templeton presented to the emergency room in January 2011 with right shoulder pain, but x-rays showed no acute abnormalities. (Tr. 272). At that time, he had no deficits in internal and external rotation of his shoulder (except what was limited by pain and stiffness), and he had full range of movement except for lateral extension (which was limited by 50 degrees). (Tr. 272-73). Although a rotator cuff tear was "suspected," the record contains no objective evidence of this condition, and his injury was managed conservatively. (*Id.*). Indeed, the last time Templeton complained of shoulder pain to his primary care physician was in March 2011, two months after his injury. (Tr. 303-04). Moreover, although Templeton complained of low back pain in April 2011, he also reported having good results taking ibuprofen for this condition, and he was encouraged to exercise, suggesting that his pain was not as disabling as he now alleges. (Tr. 301-02).

For all of these reasons, including the dearth of medical evidence pertaining to Templeton's alleged back and shoulder impairments, the Court finds no error in the ALJ's evaluation of Dr. Summers' opinion or her conclusion that he can perform medium work.

12

## 2. Substantial Evidence Supports the ALJ's Evaluation of Templeton's Subjective Complaints

Templeton also argues that the ALJ erred in finding his allegations of disability less than fully credible. (Doc. #13 at 11-14). Courts have recognized, however, that determinations of credibility related to a claimant's subjective complaints of pain rest with the ALJ because "the ALJ's opportunity to observe the demeanor of the claimant 'is invaluable, and should not be discarded lightly.'" *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 538 (6th Cir. 1981) (quoting *Beavers v. Sec'y of Health, Ed. & Welfare*, 577 F.2d 383, 387 (6th Cir. 1978)). Thus, an ALJ's credibility determination will not be disturbed "absent compelling reason." *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001). When a complaint of pain or other symptom is in issue, after the ALJ finds a medical condition that could reasonably be expected to produce the claimant's alleged symptoms, she must then consider other evidence of pain, including (1) daily activities; (2) location, duration, frequency, and intensity of pain; (3) precipitating and aggravating factors; (4) type, dosage, effectiveness, and side effects of any medication; (5) treatment, other than medication, received; (6) any means used to relieve pain; and (7) other factors concerning functional limitations. *See* 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3).

Here, in concluding that Templeton was less than fully credible,[4] the ALJ properly found that his allegations of disability were not supported by the objective medical evidence, as set forth above, *supra* at 4-6, 12-13. (Tr. 44, 48-49, 51, 54). The ALJ also considered several other factors, as summarized below:

- The ALJ found that Templeton's daily activities – which include attending to his own personal care, preparing simple meals, mowing the lawn, washing dishes, doing laundry, mopping, vacuuming, caring for pets, caring for his two-year-old

---

[4] Templeton argues that he "swore that [his alleged exertional] limitations were true and correct and the ALJ did not specify that this testimony was not worthy of belief." (Doc. #13 at 11). However, as discussed below, this is simply not accurate; the ALJ gave numerous valid reasons for discounting Templeton's credibility.

13

- granddaughter, fixing lawnmowers, going hunting, shoveling snow, clearing land, and fixing up a backyard shed – were "not limited to the extent one would expect" given his complaints of disabling symptoms and limitations. (Tr. 50, 196-99, 211, 228-31, 287, 321, 377, 409, 417, 441, 451, 464, 475).

- The ALJ also properly considered the fact that there were significant gaps in Templeton's treatment history. (Tr. 50). For example, Templeton alleges disability since February 2010, but he did not seek medical treatment until January 2011. (Tr. 164, 176, 255). Even at that time, he sought treatment for a right shoulder injury, but did not treat for this impairment after March 2011. (Tr. 255, 272, 303). The gaps in Templeton's medical treatment were a valid consideration. *See Partpilo v. Colvin*, 2015 WL 225054, at *15 (M.D. Tenn. Jan. 15, 2015) (ALJ properly considered gaps in treatment in evaluating subjective complaints).

- Additionally, the ALJ noted that when Templeton did receive medical treatment, it was essentially routine and/or conservative in nature. (Tr. 50). Specifically, the ALJ noted that Templeton did not take narcotic medications, in spite of his allegations of disabling pain. (*Id.*). And, indeed, Templeton's pain was treated with ibuprofen with admittedly good results. (Tr. 48, 301). With respect to Templeton's mental impairments, the ALJ noted that the medication he took for depression was at least somewhat effective in controlling his alleged symptoms. (Tr. 49-50, 389, 405, 419, 430, 451, 468). It was appropriate for the ALJ to consider the conservative nature of Templeton's treatment, as well as the fact that medication improved his symptoms. *See, e.g.*, *Branon v. Comm'r of Soc. Sec.*, 539 F. App'x 675, 678 (6th Cir. 2013) ("conservative treatment approach suggests the absence of a disabling condition").

- The ALJ also considered the fact that Templeton was not fully compliant with his doctor's recommendations. (Tr. 50). Specifically, the ALJ noted that he continued to smoke and to use alcohol excessively, despite his doctor's directive not to do so. (Tr. 48, 50, 272, 302, 523). An ALJ may consider a claimant's noncompliance with treatment in evaluating the credibility of his subjective complaints. *See Ranellucci v. Astrue*, 2012 WL 4484922, at *10 (M.D. Tenn. Sept. 27, 2012).

Thus, the ALJ's credibility determination is supported by substantial evidence.

For all of the above reasons, and upon an independent review of the entire record, the Court concludes that the ALJ's decision is supported by substantial evidence.

### III. CONCLUSION

For the foregoing reasons, the Court RECOMMENDS that Templeton's Motion for Judgment on the Administrative Record (Doc. #12) be DENIED, and that, pursuant to sentence

four of 42 U.S.C. § 405(g), the ALJ's decision be AFFIRMED.

| | |
|---|---|
| Dated: March 20, 2018<br>Ann Arbor, Michigan | s/David R. Grand<br>DAVID R. GRAND<br>United States Magistrate Judge<br>Sitting by Special Designation |

## **NOTICE REGARDING OBJECTIONS**

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and Fed. R. Civ. P. 72(b)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of HHS*, 932 F.2d 505, 508 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981). The filing of objections which raise some issues, but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *See Willis v. Sec'y of HHS*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. L.R. 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

15